GUYNN *v*. HELENA HOSPITAL

5-3735                                                  398 S. W. 2d 526

Opinion delivered January 17, 1966

[Rehearing denied February 21, 1966.]

*Dinning & Dinning,* for appellant.

*David Solomon,* for appellee.

ED. F. McFADDIN, Justice. This is a workmen's compensation case, seeking to recover the funeral expenses of Verna Guynn, who died of typhoid fever; which it was claimed she had contracted in the course of

---

[1]In examining the doctors, the lawyers showed research about typhoid fever; and the doctors also showed knowledge of the subject. Typical of such is the cross examination of Dr. Rodda by Mr. Dinning:

"Q. Doctor, typhoid is a rather highly contagious disease, is it not?

"A. Generally yes.

"Q. Could you also describe it as being infectious?

"A. Yes.

"Q. A person can contract typhoid fever by contact with the person carrying the germ?

"A. Actually the method of transmission is by injesting contaminated material; that is, material contaminated by the excrement of some one that has the disease. This is through water supply or spread of the organisms from material by hand to the food that is injested.

"Q. Now, that agency, whatever it might be, can remain dormant for long periods of time?

"A. You mean the ability to transmit it?

"Q. To transmit it, yes? There is no particular time in which

her employment at the Helena Hospital. The only benefit sought was funeral expenses, since the employee was single and had no dependents. The Workmen's Compensation Commission disallowed the claim; the Circuit Court affirmed; and the case is here on appeal.

Verna Guynn was graduated from high school in 1959 and immediately went to work for the Helena Hospital, where she worked continuously until a few days prior to her death on February 26, 1963. It is conceded that Verna Guynn died of typhoid fever; that the Helena Hospital is a general hospital treating contagious and infectious diseases; and that typhoid fever is considered a contagious and infectious disease. Ark. Stat. Ann. § 81-1314(a) (5) reads: ''The following diseases only shall be deemed to be occupational diseases . . . (12) infectious or contagious disease contracted in the course of employment in, or in immediate connection with, a hospital or sanatorium in which persons suffering from such disease are cared for or treated.''

That Verna Guynn worked for the Helena Hospital and that she died of typhoid fever are both admitted facts. The disputed question is whether she contracted the disease (infection) in the course of her employment

---

the ability to transmit the disease would terminate as long as it is alive, that's what I mean?

"A. That's right. Without treatment that is true. I think everyone is familiar with the case of typhoid Mary where she transmitted typhoid to many people.

"Q. And the organism continues to live in the agency which transmits it?

"A. I don't know what you mean by agency.

"Q. The organism, the actual typhoid organism or germ itself continues to live in the agency that does transmit it?

"A. You mean the individual?

"Q. Well, in whatever agency transmits it, the water, the sewage?

"A. Oh, yes.

"Q. Or the contaminated food, it continues to live?

"A. Yes.

"Q. Personal contact is not just absolutely necessary?

"A. No."

in the Helena Hospital; and it was on that question that evidence was introduced and the Commission's decision made. For the claimant it was shown that Verna Guynn had not been out of Phillips County in years; that her work at the hospital consisted in ironing linens; and that there had been several cases of typhoid fever in the hospital and the linens from such cases had been washed and ironed in the hospital. From these and other circumstances it was claimed that the only possible place that Verna Guynn could have contracted typhoid fever was at the Helena Hospital.

For the hospital it was shown that Verna Guynn died of a type of typhoid fever known as "salmonella Group D"; that there had never been a case of typhoid fever in the Helena Hospital of this group; that Verna Guynn never came in contact with any patient in the hospital; and that the linens in the hospital were all carefully washed with disinfectants before Verna Guynn ironed any of them.

The evidence on behalf of the claimant's estate could have supported an award; and, likewise, the evidence on behalf of the hospital supports the Commission's findings. After all, it was a matter of reaching conclusions from the evidence introduced; and the reaching of such conclusions is for the Commission in a case like this one, just as it is for the jury in a case tried in the law courts. What we said in *Wren* v. *Jones,* 210 Ark. 40, 194 S. W. 2d 896, is apropos here:

"We have, also, held that when facts are made to appear, from which inferences are to be drawn and conclusions reached, then it is for the jury to draw the inferences and reach the conclusions. In *Grand Lodge* v. *Banister,* 80 Ark. 190, 96 S. W. 742, Mr. Justice McCulloch said: 'If the facts are such that men of reasonable intelligence may honestly draw therefrom different conclusions on the question in dispute, then they are properly submitted to the jury

for determination. Judges should not, under that state of the case, substitute their judgment for that of the jury.' In *St. Louis, I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438, 135 S. W. 338, Ch. J. McCulloch said: 'When the testimony, though unconflicting, is such that different minds may reasonably draw different conclusions therefrom, then it is the duty of the trial court to submit the issues to the jury for determination, and on appeal the verdict of the jury should not be disturbed.' In *St. Louis, I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786, Mr. Justice Hart said: 'The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from the facts, whether controverted or uncontroverted, the question at issue should go to the jury.' See, also, *Mississippi River Fuel Corporation* v. *Senn,* 184 Ark. 554, 43 S. W. 2d 255, and many other cases collected in 16 West's Ark. Dig., 'Trials,' § 142; and see, also, 64 C. J. 346. ''Under our Workmen's Compensation Law the Commission acts as a trier of the facts, *i.e.,* a jury—in drawing the inferences and reaching the conclusions from the facts. We have repeatedly held that the finding of the Commission is entitled to the same force and effect as a jury verdict.''

Affirmed.

Johnson, J. dissents.

Cobb, J., not participating.