Mark's Sheet Metal, Inc. *v.* Republic Mtg. Co., Inc.

5-4187                                                414 S. W. 2d 106

Opinion delivered May 1, 1967

*Lofton, Herrod & Cole;* By: *E. H. Herrod,* for appellant.

*Wright, Lindsey & Jennings;* By: *Isaac A. Scott Jr.,* for appellee.

John A. Fogleman, Justice. This appeal presents the question of the priority of the lien of a construction money mortgage to a mechanic's and materialman's lien.

Appellant, a heating and air conditioning contractor, contends that its lien for labor and materials furnished for the heating and air conditioning system of a dwelling house has priority over the lien of a recorded construction money mortgage containing the language requisite to its purpose under which appellee advanced money to a developer, Pouncey Construction Company, for the construction of the house. Appellant claims priority under Ark. Stat. Ann. §§ 51-601, 51-604, 51-605, and 51-607 (1947), all being sections of Act 146 of 1895. The mortgage was recorded on February 5, 1965. The only work done on the premises by appellant prior to this date was an inspection of the premises on January 24th by Mark Partin, its President and General Manager, and the preparation of the plans for heating and air conditioning and a "Manual J worksheet"[1] delivered to the owner on January 25th. Appellant testified that his "on-site" inspection on January 24th consisted of the determination of the direction the house would face by a compass reading and the location of the center of the house on the lot. This latter was in order to determine the proper location of the unit by use of a tape measure and a wooden peg. The peg was driven into the ground to aid in the use of the tape. The whole inspection and measurement took about thirty minutes. Partin admitted that he probably could have determined the direction the house would face from a set of plans given him by Pouncey. He made mental notes of his inspection and later prepared the documents for delivery to Pouncey with an estimate of cost. He says that he and Pouncey entered into a verbal contract at the time of the delivery of these documents.[2] He claims that there was an agreement that appellant would be paid for what Partin had done if FHA approval was not obtained. Partin testified that

[1]Apparently this worksheet was for submission to the FHA as a necessary requisite for a commitment to insure a permanent loan on the house.

[2]There is testimony that would tend to show that there was no contract until FHA approval had been given somewhat later, but, in view of our holding, the difference in dates is of no significance.

appellant did not order the equipment to be used but started making the necessary fittings. The time work was started on these fittings is not definitely stated. There is no evidence that anything else was done by appellant or the builder before the date the mortgage was recorded, which, of course, was after FHA approval.

An employee of appellee made a physical examination of the lot on the date the mortgage was recorded. He found no visible construction materials, no stakes or string along the ground on the lot, nor any other evidence of anything done to prepare the lot for construction. He did not walk to the back side of the lot. He took a photograph to record the appearance of the lot as to improvement or preparation therefor. He admitted that there could have been a one-inch stake in the ground in the grass on the lot which he would not have seen. We find that the trial court correctly held that the construction money mortgage had priority.

The statutory lien relates only to work done or materials or machinery furnished under or by virtue of any contract with the owner. (Ark. Stat. Ann. § 51-601) Even under appellant's contention there was no contract with Pouncey until after the estimate of cost, plans and worksheet were submitted one day after the lot measurement and inspection on which he relies. Even though a lien perfected in the statutory way might relate back to the time the lienholder began to furnish his services or materials, the services and materials must have been furnished under the contract. The lien is effective only when the contract is made with the owner. *Hawkins* v. *Faubel*, 182 Ark. 304, 31 S. W. 2d 401. Since all work done after the contract was entered into with Pouncey was subsequent to the recording of the construction money mortgage, the lien would not be effective until after the recording. Thus, the construction money mortgage would be a prior incumbrance and entitled to priority under the plain language of Ark. Stat. Ann. § 51-605. Cases cited by appellant in support of

its contention that its lien antedates that of appellee are based on actual furnishing of supplies under contract with the owner or the doing of substantial visible construction work on the premises to be improved before the mortgage in question was recorded. See, e.g., *Cook v. Moore,* 152 Ark. 590, 239 S. W. 750; *Georgia State Savings Asso.* v. *Marrs,* 178 Ark. 18, 9 S. W. 2d 785; *Ferguson Lbr. Co.* v. *Scriber,* 162 Ark. 349, 258 S. W. 353.

But appellant contends that it has priority under § 51-607. According to the construction given that section by this court, appellant's lien would relate back to the commencement of the building so that it would be prior to a construction money mortgage recorded after *any* work had been done or materials furnished on the lot to be improved under contract with the owner by *anyone* entitled to such a lien. *Planters Lumber Company* v. *Jack Collier East Co.,* 234 Ark. 1091, 356 S. W. 2d 631. But this does not improve the position of appellant for we are unable to find any evidence of such a commencement of the building prior to the recording of appellee's mortgage.

Appellant earnestly contends that "commencement of the building" can be at some time earlier than the placing of materials on the land to be improved and that this preliminary work by appellant was such a commencement. We hold that the work done by appellant was not the type of work which would qualify as "commencement of the building." We find no decision of our court on this point, nor has appellant cited any, but in all of the Arkansas decisions that we have found under which the materialman or mechanic was found to have priority, some material had been placed on or near the property or some work had been done thereon which would be readily visible so as to make it obvious that improvements on the property were being commenced or were underway. The preliminary inspection and planning of appellant could not constitute work upon the

building or material furnished therefor. The fabrication of fittings could not have constituted commencement of the building, as we construe § 51-607, and were not "furnished" at that time. The very purpose of that section is to fix priorities in cases such as this. Consequently, there must be some means for a prospective lender to determine whether there are prior liens. Since there is no requirement that mechanic's and materialman's liens be recorded, the only possible way to make this determination is by visual inspection of the premises. The "commencement of such buildings and improvements" as used in the section in question, then, means some visible or manifest action on the premises to be improved, making it apparent that the building is going up or other improvement is to be made. 36 Am. Jur. 112, Mechanic's Liens, § 167; 57 C. J. S. 732, Mechanic's Liens, § 179. This must be done with the intention and purpose then formed to continue the building to completion. Almost without exception the courts of other states have adopted this meaning of these words in similar statutes. See *Rupp* v. *Earl H. Cline & Sons,* 230 Md. 573, 188 A. 2d 146, 1 ALR 3d 815, reviewing decisions of the Maryland court and referring to cases in accord from other jurisdictions. See, also, annotation following on page 822 at pages 825 to 828.

The decree of the lower court is affirmed.